Name: Steven G. Pegler
Address: 2099 W 4700 S C-114
Telephone: TAYLORSVILLE, UT 84129
801-205-1303

FILED
U.S. DISTRICT COURT

2019 NOV 20 P 4: 13

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH  Salt Lake  DIVISION

RECEIVED CLERK

OCT 2 5 2019

U.S. DISTRICT COURT

Plaintiff,  Steven G. Pegler
2099 W 4700 S
C 114
TAYLORSVILLE Ut
84129

v.

**COMPLAINT**

Case: **2:19-cv-00821**
Assigned To : **Jenkins, Bruce S.**
Assign. Date : **10/25/2019**
Description: **Pegler v. Doug Smith Subaru**

Defendant(s).  Doug Smith Subaru  — Actions taken by
501 W main St  sales managers
American Fork Ut 84003

### A. JURISDICTION

This action is brought pursuant to Title VII of the Civil Rights Act of 1964 as amended, for employment discrimination. Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 2000e(5). Equitable and other relief are also sought under 42 U.S.C. § 2000e(5)(g). Jurisdiction is also based on 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. §§ 1981 et seq. Where employment discrimination based upon age is alleged, jurisdiction is conferred by 29 U.S.C. §§ 626(c)(1) and appropriate relief is also sought.

### B. PARTIES

1.  Name of plaintiff:
    Present mailing address:  Steven G. Pegler
    2099 W 4700 S C114
    TAYLORSVILLE Ut
    84129

2.   Name of first defendant:
     Present mailing address or
     business location:

     *Doug Smith Subaru*
     *501 W MAIN ST*
     *American Fork UT 84003*

3.   Name of second defendant:
     Present mailing address or
     business location:

     _____

4.   Name of third defendant:
     Present mailing address or
     business location:

     _____

(Use additional sheets if necessary.)

## C. NATURE OF CASE

1.   The address at which I sought employment or was employed by the defendant(s) is:

     *501 W Main St*
     *American Fork UT 84003*

2.   The discriminatory acts occurred on or about:

     *September 12 2018 and September 2017 through*
     (Month, Day, Year)          *September 12, 2018*

3.   I filed charges with the Anti Discrimination Division of the Utah State Industrial
     Commission regarding the defendant's discriminatory conduct on or about:

     _____
     (Month, Day, Year)

4.　　I filed charges with the Equal Employment Opportunity Commission regarding the defendant's discriminatory conduct on or about:

_June 12 2018_
(Month, Day, Year)

5.　　The Equal Employment Opportunity Commission sent the attached "Notice of Right to Sue" which I received on:

_August 2 2018_
(Month, Day, Year)

(Please attach the "Notice of Right to Sue" to this complaint.)

6.　　The discriminatory acts that are the basis of this suit are:

a.　[　]　Failure to employ me
b.　[　]　Failure to promote me
c.　[✓]　Termination of my employment
d.　[　]　Demotion
e.　[　]　Denied equal pay/work
f.　[　]　Sexual harassment
g.　[✓]　General harassment
h.　[✓]　Other acts (Be specific:  Attach an additional sheet if necessary)

_Retalition_

7.　　Defendant's conduct is discriminatory with respect to:

a.　[　]　my race　　　　d.　[✓]　my religion
b.　[　]　my color　　　e.　[✓]　my national origin
c.　[　]　my sex　　　　f.　[✓]　my age

8.　　I believe that the defendant is still committing these acts against me.

[　] yes　　[　] no　　_N/A  No longer there_

### D. CAUSE OF ACTION

1.　　I allege that the defendant has discriminated against me and that the following facts form the

_Attached_

basis for my allegations:

a.    (1)    Count I: *Discrimatory Action because of my Religon*

   (2)    Supporting Facts: (Describe exactly what each defendant did or did not do.
          State the facts clearly, in your own words without citing any legal
          authority.  Use additional sheets if necessary.)

   *Attached*

b.    (1)    Count II: *Discrimatory Action because of my disability*

   (2)    Supporting Facts:

   *Attached*

## E. INJURY

1.    How have you been injured by the actions of the defendant(s)?

   *Attached*

## F. REQUEST FOR RELIEF

2.    I believe I am entitled to the following relief:

   *Attached*

Enclosed
EEOC original right to sue
EEOC charge of discrimination
Letter to Mike Smith (son of Doug Smith), written approximately January/February 2018
Social security incomes

Doug Smith Subaru Managers' names
Derrick Schwendiman
Rich Green
John Cassel

Additional Supporting Facts And hopefult more clarification

And Injury

DDS = Refers to Doug Smith Subaru

E. Cause of Action

Count 1: Action was taken against me because of my religion

Count 2: Action was taken against me because of my disability

<u>Supporting Facts</u>

was

I was fired on or about September 12, 2018. I told managers Derrick and John on September 11, 2018, that an anti-Semitic, anti-liberal Google review by Johnathan Coyne, who had been in the dealership 10 months prior, was the reason I was fired the next day, because Manager Rich Green had to sign off on it. I told Derrick and John that other than (J.C.) presence in the dealership, the review was fictitious. I immediately told Rich Green the customer was unstable and would be calling him (Green). 2 hours later (J.C.) called Rich, and Rich told me the customer was a crank, and that I should forget about it.

On September 12, 2018, Rich said he vaguely remembered something about the incident, but he agreed I should be fired. Management never accused me of not being truthful in the year I was there. If you ask the sales force, they will tell you I am as open as a book. I was hurt and stunned, and it made me realize over the next several months, that something was amiss.

✳ Johnathan Coyne

Derrick hired me in July 2017. I told him I had been on social security disability for 10 years. Sleep apnea was one of my conditions. I worked three months travelling from Taylorsville to Provo to work at a large dealership that required tremendous hours. We agreed on a schedule to work five days from 2-9pm and 8:30am-7pm Saturdays. The other salespeople worked one double shift per week during a five day work week. At the beginning of March 2018, Rich and John told me I had to take a day off each week. In February 2018, I came in second in sales. Considering the other salespeople had years of customers to draw from, this was quite an accomplishment. I lost approximately 30 hours of allowed selling time per month. I also lost deals from customers I had assured I would be there every day, because many Subaru buyers shop and come back months later to make their purchase. In June 2018 I came in second again, despite the disadvantages.

When I started, 10 salespeople who were members of the Church of Jesus Christ of Latter-Day Saints (LDS Church) made up the entire sales force. I told Derrick when he hired me that over 40 years ago I had worked for Ballard-Wade, a dealership that has strong ties to the LDS Church. Management hired two salespeople shortly after me who were native Utahns, and who I would have guessed were LDS, but who actually weren't. That question can be asked during the hiring process. Five LDS salespeople – ages 18, 21, two in their 30's, and one in his fifties, were hired after me, the last four of them in the spring or summer 2018. No other salespeople were hired while I was there. When I left, only one of the non-LDS native Utahns remained, and everybody else was LDS. There are four Subaru dealerships in the Salt Lake/Utah County area, and Subaru is a very desirable product to want to sell.

① * can't
② * First *

Around September 2017, I was helping locate cars with misplaced keys outside in the dark right before closing time with a few customers in the showroom. By hitting the red button on the misplaced keys, I would locate the correct car from its beep. I walked from the back lot towards the showroom. I heard a faint sound responding to a red button I had pushed, but I couldn't yet determine that the car making the sound was next to the showroom. Blaine Brady, a salesperson, came charging (while with customers) out of the showroom, until he was toe to toe with me screaming like a baseball manager yelling at an umpire. I didn't know what to do. He was of the top salespeople and had worked there for six years, and I didn't want to get fired. I walked to the back lot where I had been trying to match misplaced keys with their respective cars. Another salesperson came over. I had tears in my eyes, and I explained that I wanted to stand up for myself and didn't know what to do. I had been to the HR meeting where it was explained that harassment would not be tolerated. I decided to send a text message to Rich Green and tell him what had happened. I didn't want to see him in the showroom. The next day B.B. apologized. Approximately two months later, B.B. began screaming at me on a very busy Saturday while he was showing a car to a couple next to the showroom after I had told him I had just sold that car. He told me I should have put a "sold" sticker on, but I hadn't because these stickers are only put on incoming cars. After I delivered the car, I went to general manager Frank Smith and told him about both incidents, and I wanted to find the HR lady, but I didn't know that she was Frank's wife. Frank said he would handle it with manager Derrick Schwendiman on the following Monday. B.B. apologized the next week. Derrick was gone that week, however, so Frank discussed the matter with Rich Green. Rich retaliated the rest of the time I worked there: he subtly made it difficult for me to finalize deals wherever he could. If there were negotiations, I often told customers to come back when another manager was there – sometimes they would. I would need access to ~~py~~ my prospects and sales at the dealership to list the many examples of this.

Human Resources
Blaine Brady

Supporting FACTS Continued

**Treated Differently Than Other Salesmen**

John Cassell told me in confidence at the Brio restaurant in Murray (I believe in May 2018) he could not believe why salesperson Tami Baum was allowed to continue working at Dough Smith Subaru. He said he had to be nice to her and not let his bad feelings show because of his position. Most of the sales force knew of her "trickiness". She interfered with salesmen and broke rules constantly. Rich Green protected her job until everything exploded over her falsifying her hours over a long stretch of time. General Manager Frank Smith got involved and she was suspended for 3 months. An example of Rich Green protecting her is giving her 6 house deals at the end of the month (approximately August Mkt 2018). Mike Brown and Craig Tedesco, two salesmen there, showed me 3 packets of delivery on her desk. Mike said she had 3 the day before also. The sales are logged daily. There was no record of her selling those cars that she delivered and received credit.

I got fired for a review about an incident 10 months prior and Tami gets a suspension from any incidents which the sales force can verify.

Blaine Brady keeps his job over two harassments. The Doug Smith Autoplex holds a meeting telling employees harassment will not be tolerated making everyone aware of what harassment curtails.

Supporting Acts Continued

In early September, before I was fired, I sold a 2009 Subaru Forester at a very large profit. A couple was purchasing the car for their daughter. While finalizing the sale, the husband, who was a doctor, needed to leave for an appointment. The wife could not finalize the sale alone, since she didn't have a job. We had to wait about two hours for the husband to return. Rich and John sat with the wife and talked about LDS Church-related issues. In my year working there, I had never seen managers take the time to sit at the sales desk with customers for two hours. I felt foolish and thought they were protecting their profit. After my termination, I wondered if had at that time already decided to fire me. I believe I was fired because I am not a member of the LDS Church.

thef

I have been retaliated and discriminated against by Doug Smith Subaru (DSS) managers. Rich constantly told me Utah county people were different (I never heard that said to another salesperson in the relatively small showroom), without offering a reason or telling me how to deal with it. He was subtly telling me I didn't belong. He repeatedly told me that he never would have hired me with the schedule I had received from Derrick, which is why he insisted that we change it and add a day off each week. Rich always attempted to sneak the product "Etch" into my deals after I had told my customers there were no additional charges, which undermined my credibility and DSS's credibility. While leaving a Saturday sales meeting in 2018, John and I had a meeting about the finance managers' high success in selling expensive extended warranties. John told me how payments were manipulated. I was astonished. I told him that I thought that practice had been stopped because 20 years ago, most attorney generals in the country had outlawed it. After the conversation with John, Rich made it even harder for me to make deals. He made subtle attempts to get me to quit, which didn't work, because I was not a part of the LDS club. I do not believe that Utah County people are different. My wife of 43 years grew up a mile away from DSS. Her brother still lives in the same house, and I sold his son a Subaru Forester. My wife and brother-in-law are LDS.

* Explained in Mike Smith letter

F Injury:

I had been in the automobile business for many years. I sold cars from 1974 to 1981. I was a sales manager, general manager, and finance manager after that. I have had to learn a new automobile market with online pricing and many other avenues available to customers. There was a learning curve. I was told by DSS top salespeople ~~salespeople~~ man with 12 years of experience that normally that learning curve takes a year.

Derrick gave me a parting shot by telling me Subaru of America would hear about the Google review. Managers and salespeople from other Subaru dealers communicate. A year at DSS wasted. I tried telling two non-Subaru auto dealers I wanted to work for what happened. I got turned down after feeling like I would get hired. Good dealers don't take risks when hiring. My reputation was hit. The top salesperson at Doug Smith Subaru has been making 6 figures for a long time. I was second to him twice in a short time and still getting my feet wet.

H Request for Relief

I seek a 20% increase on my monthly average sales for 2018 for one year and an additional 20% for a second year. I seek punitive damages to be decided by the court and jury.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Phoenix District Office**

3300 N. Central Avenue, Suite 690
Phoenix, AZ 85012-2504
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Phoenix Status Line: (602) 640-5000
TTY (602) 640-5072
FAX (602) 640-5071

Steven Pegler
2099 W. 4700 S.
Taylorsville, UT 84129

Subject:     Dismissal of Charge
Charge Number: 540-2019-02336

Dear Mr. Pegler:

The purpose of this letter is to inform you that the EEOC has concluded its investigation of the above-referenced charge of employment discrimination. After reviewing the information in the file including the information you submitted, the EEOC does not believe that additional investigation would result in our finding a violation.

The EEOC has terminated its investigation into your allegations. While we fully understand that the parties to a charge often have very firm views that the available evidence supports their respective positions, our final determinations must comport with our interpretation of the available evidence and the laws we enforce. This letter and the enclosed documents will dismiss your case and no further action will be taken by the EEOC.

Enclosed is your Dismissal and Notice of Right to Sue. The Dismissal and Notice will explain your right to pursue the matter in court.  If you want to pursue your charge, you may do so on your own by filing in Federal District Court within *90-days from the date that delivery of the Notice was <u>attempted</u> at your last known address of record or 90 days of receipt of the Notice, whichever is earlier. If you do not file a lawsuit within the required 90-day period, your right to file a lawsuit in this matter will expire and cannot be restored by EEOC.*

If you have any questions, please feel free to contact me at (602) 640-5028.

Sincerely,

JUL  3 1 2019
————————
Date

Jeremy Yubeta
Supervisory Investigator

Cc:

Jev

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: Steven Pegler<br>2099 W. 4700 S.<br>Taylorsville, UT 84129 | From: Phoenix District Office<br>3300 North Central Ave<br>Suite 690<br>Phoenix, AZ 85012 |
|---|---|

|  | [ ] | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 540-2019-02336 | Jeremy A. Yubeta,<br>Enforcement Supervisor | (602) 640-5028 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Elizabeth Cadle,
District Director

JUL 3 1 2019

(Date Mailed)

Enclosures(s)

cc:   Tiffany Velez
Human Resources
Doug Smith Autoplex
501 West Main
American Fork, UT 84003

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 540-2019-02336 |

| Utah Anti-Discrimination & Labor Division | and EEOC |
|---|---|
| State or local Agency, if any | |

I was discharged on or about September 12, 2018 using an inaccurate Google review as an excuse by a customer I had 10 months prior to the review. It was fictious and I had told Rich Green about this customer at the time. He referred to me as a fat Jewish bald liberal guy and because I still saw reviews he complained about the whole dealership and management 6 months after I was fired.

I believe I have been retaliated against for complaining about Brady and discriminated against due to my religion, Jewish and my national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe I have been discriminated against due to my age in violation of the Age Discrimination in Employment Act of 1967, as amended. I believe I have been discriminated against in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| ___June 29 2019___<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

EEOC Form 5 (11/09)

'19 7-3 14:19

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 540-2019-02336 |

| Utah Anti-Discrimination & Labor Division | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Steven Pegler** | **(801) 205-1303** | **1952** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2099 W. 4700 S., Taylorsville, UT 84129** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **DOUG SMITH SUBARU** | **15 - 100** | **(801) 847-1048** |

| Street Address | City, State and ZIP Code |
|---|---|
| **501 W. Main St., American Fork, UT 84003** | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☐ SEX ☒ RELIGION ☒ NATIONAL ORIGIN

☒ RETALIATION ☒ AGE ☒ DISABILITY ☐ GENETIC INFORMATION

☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                Latest
                        **09-12-2018**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began working at Respondent in late July 2017 as a salesman.

When I began working at Respondent I told manager Derrick Schwendiman about my medical condition, how it exhausted me but that I still wanted a job there.

He hired me and gave me a schedule that gave me as many hours as everyone else (by not having a day off).

On or about March 1, 2018 they reduced my schedule by one 7 hour shift a week.

In or around September 2017 salesman Blaine Brady became aggressive with me and got in my face. I complained about this to sales manager Rich Green. Then, in or around October or November 2017, after explaining that a car had already been sold, Brady became aggressive with me again.

As I went to Human Resources to report Brady I was met by General Manager Frank Smith. He said he would handle the complaint. So, I told him what happened both times with Brady and Rich Green. Smith reprimanded Green who made Brady apologize to me. However, after this, Green made it difficult for me to close deals.

During my tenure Rich Green constantly told me that Utah County people are different (implying that I am not Mormon nor am I as conservative as locals who live in the County).

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY -- When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| *June 29 2019*<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

Mike Smith

Your management team at Doug Smith Subaru has soiled my reputation. Subaru of America accepts the Google review by Johnathan Coyne because your team failed to investigate it. A review written recently about a visit over 10 months ago-not 2 weeks ago as suggested by your team. A fictitious one.

I will have a difficult time using my employment with you as a reference. People I worked with at the AutoPlex will doubt my integrity.

Networking with them will be hard. At 66 years old it will be harder.

It is ironic that your management team implies that they are protecting Subaru of America and Doug Smith Subaru when they encourage their employees (And especially their managers) to mislead and deceive their customers.

There is proof for everything I am going to tell you.

Enclosed: Federal Trade Commission Act Section 5 Unfair or Deceptive Acts or Practices

I have witnessed the following and/or been told by one of your management team.

1 Under Allowing

This practice happens when the salesperson and customer agree on a price to purchase a vehicle.

The salesperson has it appraised. He then goes back to the customer and tells him a value less than the appraisal. If the customer accepts the difference it goes into the profit. Many monthly bonuses are issued by management to encourage this deception.

2 Etch

This is produced by a company to pay the customer if his vehicle is stolen and not recovered in a timely manner before he settles with his insurance. A relatively small amount with stipulations.

The dealership charges $200. It is added as a normal fee when purchasing a vehicle. I always crossed it out and received a lot of static from management. Finance makes a high amount on it.

Most people accept it as a legitimate charge much like a doctor bill.

3 Manipulation of payments and Aftermarket Sales

A customer goes into the Finance Office with approximate payments.  Items are offered to protect the vehicle e.g. paint sealant, fabric sealant and additional warranties. A smaller increase in the payment is offered which by itself would not cover the cost of the product. The interest rate is played with to adjust it. In addition, people with low credit scores and new finance buyers seem to usually by everything.

Google Review

If anyone reading this review written about 10 months after the event cannot conclude it is Anti-Semitic and Anti-Liberal from an antagonistic person, re-read It!

After the test drive I went to manager Rich Green and explained what had happened. Jonathan called Rich that day and Rich told me not to worry about it the customer was not a nice person to para phrase.

The day I was fired Rich said he vaguely remembered a call about 10 months go about it. The other two managers told me about the review before closing the night before being let go. I explained how long ago it happened and that Rich had spoken with him. "How do we know it didn't happen recently?' explained John in an animated voice. I told them they have known me for over a year that they wouldn't believe me hurt big time. I lost all respect for both of them. I previously held John in the highest esteem. Five minutes later I w2as leaving and the two of them were laughing in John's office so help me God All serious and hell fire with me then as if it meant nothing.

Knowledge of a person named Dave Ramsey saying not to ever lease a car came from Jonathan. I never heard of him at that time and quickly forgot the name after that. I told him I disagree because sometimes it's the option for certain people. Jonathan got belligerent. We went back to the dealership. Management never investigated it.

I have given my heart and soul to this job. I have always put the dealership first. It's the first thing I was taught over 40 years ago. I have been patient and treated all my customers with the utmost respect.

I have dealt with harassment. Bullying is one of them. The first time it happened I immediately reported it to Rich. He got it to stop. I didn't report it to Human Resources because the salesperson has been there a long time. The night it happened I went back where the cars are kept. I couldn't help having tears. A fight would have gotten me fired. I needed the job. There is a witness that consoled me that night and still works there. Awhile later another incident occurred with the same person. This time I sensed I was being baited and a blow up would happen. I went to Frank Smith to find the woman that handled HR not  knowing it was Frank's wife. Frank handled it and laid into Rich and the bully. I have been badgered by Rich since then. Biggest way has been in the difficulty doing deals and deals THAT weren't made because of him. Many of the customers I had come back when a different manager was on and made the deal.

I have had other harassment – disabilities age religion unfair treatment and not being from Utah County a reference you can figure out.

I want to apply to another Subaru dealership. How can I? How can I seek other opportunities and tell them I was fired?

**BENEFICIARY'S NAME:** LANAE PEGLER

Your Social Security benefits will increase by 2.8% in 2019 because of a rise in the cost of living. You can use this letter as proof of your benefit amount if you need to apply for food, rent, or energy assistance. You can also use it to apply for bank loans or for other business. Keep this letter with your important financial records.

## How Much Will I Get And When?

- Your monthly amount (before deductions) is                                    $554.50
- The amount we deduct for Medicare Medical Insurance is              $137.50
  (If you did not have Medicare as of November 16, 2018,
  or if someone else pays your premium, we show $0.00.)
- The amount we deduct for your Medicare Prescription Drug Plan is    $26.00
  (We will notify you if the amount changes in 2019. If you did not elect
  withholding as of November 1, 2018, we show $0.00.)
- The amount we deduct for voluntary Federal tax withholding is        $0.00
  (If you did not elect voluntary tax withholding as of
  November 16, 2018, we show $0.00.)
- After we take any other deductions, you will receive                    $391.00
  on or about January 9, 2019.

If you disagree with any of these amounts, you must write to us within 60 days from the date you receive this letter. Or visit *www.ssa.gov/non-medical/appeal* to appeal online. We would be happy to review the amounts.

If you receive a paper check and want to switch to an electronic payment, please visit the Department of the Treasury's Go Direct website at *www.godirect.org* online.

## What If I Have Questions?

- Visit our website at *www.socialsecurity.gov*
- Call us toll-free at **1-800-772-1213** (TTY **1-800-325-0778**)
- Contact your nearest Social Security office

# Your New Benefit Amount

**BENEFICIARY'S NAME:** STEVEN G PEGLER

Your Social Security benefits will increase by **2.8%** in 2019 because of a rise in the cost of living. You can use this letter as proof of your benefit amount if you need to apply for food, rent, or energy assistance. You can also use it to apply for bank loans or for other business. Keep this letter with your important financial records.

## How Much Will I Get And When?

- Your monthly amount (before deductions) is                                   $1,768.50
- The amount we deduct for Medicare Medical Insurance is              $135.50
  (If you did not have Medicare as of November 16, 2018,
  or if someone else pays your premium, we show $0.00.)
- The amount we deduct for your Medicare Prescription Drug Plan is     $78.60
  (We will notify you if the amount changes in 2019. If you did not elect
  withholding as of November 1, 2018, we show $0.00.)
- The amount we deduct for voluntary Federal tax withholding is        $0.00
  (If you did not elect voluntary tax withholding as of
  November 16, 2018, we show $0.00.)
- After we take any other deductions, you will receive               $1,554.40
  on or about January 3, 2019.

If you disagree with any of these amounts, you must write to us within 60 days from the date you receive this letter. Or visit ***www.ssa.gov/non-medical/appeal*** to appeal online. We would be happy to review the amounts.

If you receive a paper check and want to switch to an electronic payment, please visit the Department of the Treasury's Go Direct website at ***www.godirect.org*** online.

## What If I Have Questions?